**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Nancy J. Pannebecker,<br><br>            Plaintiff,<br><br>   v.<br><br>Liberty Life Assurance Company of<br>Boston, a foreign corporation,<br><br>            Defendant. | CV-01-825-PHX-JAT<br><br>**FINDINGS OF FACT<br>AND CONCLUSIONS OF LAW** |

The case involves Plaintiff's challenge of Defendant's decision to deny her disability benefits provided under a long-term disability plan ("Plan") that is subject to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). Pending before the Court is Plaintiff's Motion for Judgment under Rule 52(c) (Doc. # 108) and Defendant's Motion for Summary Judgment Re: Report and Issues on Remand (Doc. # 105).

In support of moving for judgment under Rule 52(c) of the Federal Rules of Civil Procedure, Plaintiff cites *Kearney v. Standard Ins. Co.*, 175 F.3d 1084 (9th Cir. 1999). In *Kearney*, the Ninth Circuit reversed summary judgment and remanded the matter for resolution of a genuine issue of fact. The Ninth Circuit instructed that a trial on the administrative record would be the proper method to resolve the issue of fact, if the trial court did not find it necessary under *Mongeluzo v. Baxter Travenol Disability Benefit Plan*, 46

F.3d 938 (9th Cir. 1995), to consider additional evidence. *Kearney*, 175 F.3d at 1094-95. According to the Ninth Circuit, the "record" consists not of testimony but of exhibits and other documents which routinely serve as the basis for findings of fact. *Id.*

In addition, during oral argument on the cross motions, both parties agreed that a bench trial involving live testimony would not be necessary to resolve the issues before the Court. Instead, the parties represented that the Court has before it, via the parties' filings, all of the information necessary to render a decision in this case.[1] Accordingly, pursuant to *Kearney*, the parties' representations during oral argument, and Rule 52 of the Federal Rules of Civil Procedure, the Court has reviewed the administrative record and hereby finds and concludes as follows:

**A.   FINDINGS OF FACT**

On January 27, 2004, the Court conducted a bench trial in this matter. On March 2, 2004, the Court issued Findings of Fact and Conclusions of Law (Doc. # 55). The Court therein set forth its finding that Plaintiff was capable of performing sedentary work. However, the Court concluded that "[a]lthough the administrative record presents ample evidence in support of Defendant's conclusion that Plaintiff was able to perform some unnamed 'sedentary' job, more is needed to evaluate Defendant's decision." Thereafter, the Court stated:

> The Plan provisions require that Plaintiff be "unable to perform all of the material and substantial duties of [her] own or any other occupation for which [she] is or becomes reasonably fitted by training, education, experience, age, and physical and mental capacity." Defendant does not point to, and the Court did not find, any evidence in the administrative record regarding evidence of a specific "sedentary" position, if any, for which Plaintiff is fitted by training, etc . . . . Because there is not (sic) evidence regarding the fit between Plaintiff's condition, her training, etc . . ., and a specific sedentary job, the Court finds

---

[1] Also at oral argument, Defendant stated that it too should have moved for judgment under Rule 52, instead of under Rule 56, because of the existence of a genuine issue of material fact. On this basis, the Court will deny Defendant's Motion for Summary Judgment Re: Report and Issues on Remand (Doc. # 105).

- 2 -

>      that Defendant failed to make a reasonable inquiry into the type
>      of skills Plaintiff possesses and whether those skills may be used
>      at another job. Accordingly, the Court finds that Defendant has
>      failed to properly apply the Plan provisions. In light of that
>      failure, the Court will remand this case to Defendant, as the Plan
>      Administrator, to make a determination as to the types of
>      sedentary positions, if any, for which Plaintiff is reasonably
>      fitted by training, education, experience, age, and physical and
>      mental capacity.

On remand, Defendant retained Jacqueline Kurth ("Ms. Kurth"), a certified rehabilitation counselor, to perform a transferable work skills analysis and employment assessment for Plaintiff. Ms. Kurth reviewed and summarized Plaintiff's education and work history, as well as her medical history of coronary artery disease, in preparing her June 7, 2004 vocational evaluation report.

In 1968, Plaintiff received a Bachelor of Arts Degree in Political Science from Pennsylvania State University. From 1968 through 1973, Plaintiff worked for the National Security Agency ("NSA") as a Programmer. At the NSA, Plaintiff supported design and development of large-scale processing systems for the handling and analysis of data. From 1973 through 1978, Plaintiff worked for General Electric Company ("GE") as a Systems Analyst in the Space Division. From 1978 through 1981, Plaintiff worked for Hughes Aircraft Company ("Hughes") as a Technical Project Leader for the Space and Communications Group, Information Systems Division. At Hughes, Plaintiff developed software design specifications, designed and implemented graphics application software, and supported all integration and test activities. From 1981 through 1982, Plaintiff worked for International Business Machines ("IBM") as a Marketing Engineer with the Federal Government Systems Division. At IBM, she was responsible for developing new business in the area of analyzing customer database requirements, conducting comparative evaluations of IBM-compatible products, and generating database design and software portions of technical proposals for new business. From 1982 through 1988, Plaintiff worked for Computer Corporation of America ("CCA") as Director of Database Consulting. At CCA, Plaintiff directed technical consulting services for federal and commercial clients, and was

responsible for the management of consulting projects as well as the development, supervision and direction of the consulting staff. Finally, in 1988, Plaintiff returned to Hughes as a Laboratory and Department Manager in Hughes' Information Technology Department, Communications and Data Systems Division. Her job responsibilities included supervising twenty to thirty technical professionals who focused on research and development projects, business development, enhancement of technological base in the areas of database, human machines interface, prototyping environments and tools, and software and systems engineering techniques. Plaintiff also was involved in customer marketing, leading specific business campaigns and proposal development in the management, technical and costing areas.

Based on Plaintiff's work experience, Ms. Kurth found:

> [Plaintiff] has transferable work skills from her prior work experience in the area of managing, coordinating, directing and designing computer systems. She directed the work of systems analysts, technical lab professionals, computer programmers, support specialist and other computer-related workers. She was involved in planning and coordinating activities such as installation and upgrading of hardware and software, programming and systems design, development of computer networks, and implementation of internet and intranet sites. As a computer and information system manager, she would analyze the computer and information needs of clients. She determined immediate and long-range personnel and equipment requirements to meet operational needs.
>
> [Plaintiff] has developed work skills from her prior work experience that include the ability to coordinate activities of others, analyze data, compute data, supervise personal (sic), persuade others, present information in a clear and articulate manner. The jobs she has performed require a high general learning ability, verbal aptitude, numerical aptitude, spacial aptitude, form perception, motor coordination, and clerical perception.

Ms. Kurth then concluded:

> Given [Plaintiff's] education background, work history and current physical capabilities, she should be able to perform a variety of sedentary occupations. Jobs such as customer service representative, information clerk, receptionist, data entry keyer, and general office clerk would be within her transferable work

> skills.
>
> * * *
>
> Based on review of medical records and documents, it is my opinion that [Plaintiff] is currently capable of working on a full time basis in a sedentary occupation.
>
> There are numerous sedentary occupations which [Plaintiff] is qualified to perform based on her educational background, transferable work skills and physical capabilities. The occupations/jobs have been identified as well as the rates of pay for these jobs that exist in the open labor market.

On June 9, 2004, Defendant filed a Report Upon Remand (Doc. # 77), attaching thereto a copy of Ms. Kurth's report and requesting judgment in its favor based on Ms. Kurth's identification of sedentary occupations for which Plaintiff is reasonably fitted by training, education, experience, age and physical and mental capacity. By Order dated December 3, 2004 (Doc. # 87), the Court remanded the case to the Plan Administrator to provide Plaintiff the opportunity to administratively appeal Defendant's Report Upon Remand.

During the administrative appeal period, Plaintiff retained Lisa Clapp ("Ms. Clapp"), a vocational consultant, to assess and evaluate Plaintiff's employability. According to Ms. Clapp's February 14, 2005, report:

> On January 25, 2005 a vocational interview was performed with [Plaintiff] by [Ms. Clapp]. Subsequent to records review and analysis and the initial vocational interview with [Plaintiff], labor market research was performed with a multitude of employers for the vocational directives of office clerk, data-entry operator, information clerk, customer service representative and administrative assistant/office worker as well as receptionist. The purpose of the labor market research was to profile [Plaintiff] giving consideration to her past work experience, educational background, age and medical restrictions.

Ms. Clapp found that the labor market research indicated the jobs surveyed involved a stressful work environment, which is "contra-indicated" for Plaintiff. Further, Ms. Clapp stated:

> Review of [Plaintiff's] résumé is impressive on paper, however,

- 5 -

> it is noted that she last worked in September of 1996 and her pertinent work experience was with Federal Government contract projects. Therefore, her practical work experience is distant, outdated and really not applicable in the private employment sector.
>
> *   *   *
>
> In short, [Plaintiff] has 27 years of diverse experience involving technical, managerial and marketing roles related to the design and development of large-scale systems in the federal government sector. Although she at one time had extensive knowledge of system analysis and design techniques, database management technology, and organizational planning and management, all of this experience took place in the public sector of the federal government. Therefore, [Plaintiff's] skills would not be deemed as suitable and significant in the private sector.

Ms. Clapp also criticized the report prepared by Ms. Kurth, stating:

> In short, it would appear as though Ms. Kurth's research performed was simply gathering information about positions, which she felt were suitable for [Plaintiff]. The appropriate way to perform labor market research is to create a profile of an individual, which gives consideration to their educational background, age, work history, current skills and recent employment experience as well as their medical restrictions. Once the profile is completed, it is presented to employers via telephone research to inquire as to their consideration suitability (sic) for the positions. It does not appear Ms. Kurth performed this activity and therefore she has instead relied upon her past experience versus inquiring as to what these employers are actually looking for in a competitive and qualified applicant currently.

Thereafter, Ms. Clapp concluded:

> Based upon the results of actual labor market research where [Plaintiff] was profiled to employers, it is this consultant's opinion that [Plaintiff] has been and remains totally disabled from substantial gainful employment based upon the criteria set forth in Liberty Life Assurance Company's definition of disability. Specifically, [Plaintiff] is not reasonably fitted by training, education, experience, age, and physical and mental capacities for these positions.

After receipt of Ms. Clapp's employability assessment report, Defendant requested that Ms. Kurth review the report, as well as the letter of appeal from Plaintiff's counsel, to determine whether or not the information contained therein changed her opinion regarding

suitable employment for Plaintiff. In a report dated April 17, 2005, Ms. Kurth stated:

> The Employability Assessment submitted by Ms. Clapp uses an approach to evaluate employability that is typically used in workers' compensation system. Each system, workers' compensation, long term disability, social security, etc. utilizes an approach that is specific to that system. In this case, the consultant did not use an approach to evaluate [Plaintiff's] employability that is specific to the long term disability policy.

* * *

> The Employability Assessment completed by Ms. Clapp dated February 14, 2005 approaches the evaluation of [Plaintiff's] employability as typical in a workers compensation or industrial injury claim. In my report dated [June 7, 2004] I conclude that based on [Plaintiff's] education, and prior work experience, she has transferable work skills in the area of managing, coordinating, directing, and designing computer systems. She also has abstract reasoning and technical skills as well as the ability to communicate. Because of the work that she was involved in, she would have to plan and coordinate activities and implement plans of action. There is nothing in the medical records that reflect or indicate [Plaintiff] has lost the ability to use her intelligence or aptitude for doing activities such as simple problem solving, analyzing information, learning new information and communicating through written and verbal language.

In addition, Ms. Kurth stated:

> In my report, I identified jobs that are considered entry level and typically associated with less stress. As [Plaintiff] has said that she is not able to handle the stress of her former occupation (meeting deadlines and managing people) I used her transferable work skills to identify occupations such as Customer Service Representative (not telephone solicitor or sales), Information Clerk and Receptionist and General Office Clerk. It is my opinion that the job of Customer Service Representative, such as Computer Support or Help Desk, Information Clerk and Receptionist and General Office Clerk are positions that are within [Plaintiff's] transferable work skills and the physical capabilities as outlined in the Functional Capacity Form dated June 13, 2000.

Based on the foregoing, Ms. Kurth concluded "it continues to be my opinion that if [Plaintiff] were motivated to return to work, there are numerous sedentary occupations she

would be able to perform based on her physical and mental capacity."[2]

In correspondence dated May 3, 2005, Defendant declined to alter its determination to deny benefits, stating:

> Based upon our thorough review of [Plaintiff's] claim, we have determined that she has sedentary work capacity. Extensive vocational review conducted by Ms. Kurth establishes that there are sedentary occupations that [Plaintiff] has the functional capacity and vocational skills to perform. As such, the denial of LTD benefits must be maintained.

After Defendant declined to alter its determination, Plaintiff filed a motion to appeal the decision on remand (Doc. # 91). During a subsequent Rule 16 scheduling conference, the Court set discovery and dispositive motion deadlines. Thereafter, the Court determined that the *de novo* standard of review would apply to the issues being appealed on remand (Doc. # 96).

**B.     CONCLUSIONS OF LAW AND RESULT**

In *McKenzie v. General Telephone Company of California*, 41 F.3d 1310, 1313 (9th Cir. 1994), the language of the disability plan provided:

> [A]fter the first 18 months you will be considered totally disabled only if you are completely unable to engage in any and every duty pertaining to any occupation or employment for wage or profit for which you are or become reasonably qualified by training, education or experience.

Interpreting this "any occupation" language, the *McKenzie* court stated:

> [T]he language of the 'any occupation' standard is not demanding. In order for Travelers to find that McKenzie is not totally disabled, it requires only that McKenzie be able to perform a job for which he is qualified or for which he can reasonably become qualified by training, education or experience.

*McKenzie*, 41 F.3d at 1317; *see also Graeber v. The Hewlett Packard Company Employee Benefits Organization Income Protection*, 421 F.Supp.2d 1246, 1253 (N.D.Cal. 2006) (citing

---

[2]Ms. Kurth noted that the identified occupations "were being performed in the open labor market in the Phoenix metropolitan area in the year 2000."

- 8 -

1  *McKenzie* and stating that plaintiff was not totally disabled under the "any occupation"
2  standard "if he was able to perform a job for which he was qualified or for which he
3  reasonably could become qualified by training, education or experience."); *Brigham v. Sun*
4  *Life of Canada*, 317 F.3d 72, 86 (1st Cir. 2003) (finding paraplegic not totally disabled and
5  noting that "the hurdle plaintiff had to surmount, establishing his inability to perform any
6  occupation for which he could be trained, was a high one.").

   Like the "any occupation" standard in *McKenzie*, the Plan partially defines "any
   occupation" as those "for which [Plaintiff] is or becomes reasonably fitted." Considering the
   interpretation given to the similar language in *McKenzie*, the Court concludes that the Plan's
   "any occupation" standard is "not demanding." *Id*. And, the Court concludes that to find
   Plaintiff not totally disabled under the Plan requires only that Plaintiff be able to perform a
   job "for which she is or for which she can reasonably become" fitted by training, education,
   experience, age, and physical and mental capacity. *Id*.[3]

   As concluded in the Court's March 2, 2004, Findings of Fact and Conclusions of Law
   (Doc. # 55), "the administrative record presents ample evidence in support of Defendant's
   conclusion that Plaintiff was able to perform some unnamed 'sedentary' job." However, the
   Court remanded the matter to Defendant "to make a determination as to the types of
   sedentary positions, if any, for which Plaintiff is reasonably fitted by training, education,
   experience, age, and physical and mental capacity." The Court has thoroughly reviewed the
   administrative record and finds that Defendant has identified sedentary positions for which
   Plaintiff is or can reasonably become fitted by training, education, experience, age, and
   physical and mental capacity. While Plaintiff has submitted contrary evidence, the Court,
   as discussed below, does not find the evidence sufficient to support a finding under the Plan

---

[3]Plaintiff argues that Defendant improperly imposes upon her additional training obligations by including under the definition of disabled those occupations for which Plaintiff is, becomes, or *could become* fitted. In light of the interpretation of similar language in *McKenzie*, this argument is without merit.

- 9 -

that Plaintiff is disabled. Accordingly, the Court finds that Plaintiff is not disabled under the terms of the Plan.

Plaintiff asserts numerous arguments in support of her contention that she is disabled under the terms of the Plan. The Court, in reviewing the administrative record and reaching its decision, has fully considered Plaintiff's arguments and will address them in turn.

First, Plaintiff argues that Defendant identified jobs without considering Plaintiff's training, education, experience, age, and mental and physical capacity.[4] The Court disagrees. Upon remand, Defendant retained Ms. Kurth to perform a transferable skills analysis and employment assessment for Plaintiff. Ms. Kurth reviewed Plaintiff's education, work history, and medical history. Thereafter, Ms. Kurth identified numerous sedentary occupations that Plaintiff could perform given her education, work history and physical capabilities. Ms. Kurth also noted that the occupations identified are typically associated with less stress. The Defendant reviewed this information, along with the other information contained in Plaintiff's claim file, and determined that a reversal of its denial of benefits was not warranted. As for consideration of Plaintiff's age, there is nothing in the administrative record to indicate that Plaintiff's age (59 years old) is an obstacle to performing any of the sedentary occupations identified by Ms. Kurth. *See Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1308 (5th Cir. 1994) ("people in their sixties and seventies . . . are employed and employable throughout the workplace today.").

Second, Plaintiff argues that Ms. Clapp performed a proper evaluation of Plaintiff's employability and that it shows Plaintiff is not fitted for any of the sedentary occupations identified by Ms. Kurth. The Court disagrees. Ms. Clapp, in performing her evaluation,

---

[4]The Court finds *Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455 (9th Cir. 1996), cited by Plaintiff for the proposition that unconsciousness is not the criteria for a disability determination, to be inapposite. The *Saffle* court was concerned with the proper interpretation of the phrase "each and every duty of his regular occupation," not with the interpretation of a claimant's "training, education, experience, age, and mental and physical capacity" under an "any occupation" standard.

- 10 -

1 conducted labor market research for Plaintiff. The research involved profiling plaintiff,
2 giving consideration to her experience, education, age, and medical condition. Thereafter,
3 Ms. Clapp surveyed various employers, who advertised jobs under the occupational
4 categories identified by Ms. Kurth, to determine whether or not the employers would
5 consider Plaintiff a suitable and competitive candidate. Ms. Clapp found, based on the
6 results of the labor market research, that Plaintiff does not possess suitable skills and would
7 not be considered a competitive and qualified applicant; therefore, Ms. Clapp concluded that
8 Plaintiff is totally disabled from "substantial gainful employment" under the Plan.[5]

9 The Court finds that the methodology utilized in Ms. Clapp's evaluation does not
10 support her ultimate conclusion. More specifically, simply because Plaintiff may be unable
11 to perform the duties of the specific jobs surveyed under the broad occupational categories
12 Ms. Kurth identified does not necessarily equate to a finding that Plaintiff is unable to
13 perform any job under the occupational categories. Accordingly, the Court finds that Ms.
14 Clapp's report does not refute Ms. Kurth's findings.[6]

15 In addition, Ms. Clapp's report clearly implies that Defendant is required to locate or
16 identify a specific job for Plaintiff, one for which she will be hired, prior to making a

---

[5] The Court notes that the Plan does not require that Plaintiff be capable of performing "substantial gainful employment" before Defendant may conclude that Plaintiff is not disabled. This standard is one used by the Social Security Administration to determine disability. *See Reddick v. Charter*, 157 F.3d 715, 721 (9th Cir. 1998). Further, the Court finds that Plaintiff's argument that Defendant cannot reject Plaintiff's social security award without explanation lacks merit because the Court already has concluded that "the administrative record presents ample evidence . . . that Plaintiff was able to perform some unnamed 'sedentary' job" and the Plan determines benefits under a different standard. *See Madden v. ITT Long Term Disability Plan for Salaried Employees*, 914 F.2d 1279, 1285-86 (9th Cir. 1990).

[6] Alternatively, the Court would sustain Defendant's hearsay objection concerning Ms. Clapp's report and what Ms. Clapp allegedly told third parties and what third parties allegedly told her. The Court notes that Plaintiff, at the hearing on the cross motions for judgment, agreed that a bench trial, at which live testimony could be presented and the hearsay problem potentially cured, was not necessary.

- 11 -

determination that Plaintiff is not disabled. In as much as the Plan does not require that Defendant ensure Plaintiff the availability of an alternative job prior to terminating benefits, the Court cannot impose such requirement. *See Block v. Pitney Bowes Inc*, 705 F.Supp. 20, 24 (D.D.C. 1989), *aff'd*, 952 F.2d 1450 (D.C. Cir. 1992) ("When a plan does not specifically state that the employer has the duty of ensuring the availability of an alternative job, the court cannot impose such a requirement."); *see also Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1309 (5th Cir. 1994) (finding "it was not necessary under this plan that the administrator 'insure the availability of an alternative job' for Duhon before terminating his benefits."). Further, "disability" under the plan is not defined in terms of Plaintiff being unable to locate a specific job; instead, it is defined more generally in terms of Plaintiff being unable to perform the duties of "any occupation." *See Couzens v. Equitable Life Assurance Society of the United States*, 1998 WL 695425, * 4 (E.D.Pa. 1998) (Under the plan, "[t]otal disability does not mean that Plaintiff cannot find a job, but rather that Plaintiff is unable to perform any gainful occupation.").

Third, Plaintiff argues that Defendant improperly delegated discretion to its counsel and Ms. Kurth. Specifically, Plaintiff claims that Ms. Kurth forwarded her report to Defendant's counsel who then submitted it directly to the Court without any analysis on the part of Defendant. *See McKenzie*, 41 F.3d at 1316 (Evidence submitted directly to the district court, without first being reviewed by the plan administrator, was improperly considered because it was not in the administrative record.). Defendant may not have reviewed Ms. Kurth's report before the Report Upon Remand (Doc. # 77) was filed. However, Defendant clearly considered the report after the Court remanded the matter so Plaintiff could administratively appeal the Report Upon Remand, as evidenced by the Defendant's May 3, 2005 correspondence to Plaintiff's counsel declining to alter its determination. Thus, Plaintiff's argument is without merit.

Fourth, Plaintiff argues that Defendant did not follow its own policy definitions and internal guidelines regarding the consideration of earnings when it determined that Plaintiff

- 12 -

is not disabled. The Court already has concluded that the definition of disabled in the Plan does not contain comparable salary language, thus precluding a comparable salary analysis. *See* Findings of Fact and Conclusions of Law (Doc. #55).[7] Further, the Court notes that Ann Berry, a Disability Appeals Consultant for Defendant, testified that the internal guidelines, known as Policies, Procedures and Exceptions ("PP&Es"), which contain references to salary comparisons that may be used to determine disability status, are not hard and fast rules and are not required to be applied in every case.[8] Finally, the Rehabilitative Employment Benefit which contains a salary component cannot reasonably be read to modify the definition of disabled and, furthermore, Plaintiff has made no showing that she has attempted to avail herself of such a benefit.

Fifth, Plaintiff argues that Defendant deprived her of a fair review by allowing Ms. Kurth to prepare a second report, after Plaintiff administratively appealed, to which Plaintiff has not had an opportunity to respond. Plaintiff claims that this is in violation of 29 C.F.R.

---

[7] Plaintiff also argues that *Madden v. ITT Long Term Disability Plan for Salaried Employees*, 914 F.2d 1279 (9th Cir. 1990), requires that an occupation under the "any occupation" standard must approach pre-disability earnings to preclude disability benefits. *Madden* only provides that a plan definition of disabled, which recognizes a claimant's training, education or experience, favors a claimant far more than an emphasis on remuneration. The Court already has found that Defendant, as required by the Plan, considered Plaintiff's training, education, and experience, as well as her age, and mental and physical capacity, in determining that she is capable of performing the identified sedentary occupations. The Court finds this sufficient to satisfy *Madden*. Further, Plaintiff's reliance on non-Ninth Circuit case law in arguing that "reasonably fitted by training, education, and experience" requires the existence of a job which is comparable in terms of remuneration is unpersuasive in light of *Madden* and *McKenzie*, 41 F.3d 1310.

[8] Plaintiff erroneously states that Defendant, in response to discovery, admitted the relevance of the PP&Es to Plaintiff's claim and that the PP&Es were applied in this case. To the contrary, Defendant's discovery response states that the PP&Es "are not 'how to' guides and they are not used all the time . . . there is no record or way to identify whether any of these [PP&Es] were in any way reviewed or utilized in the handling of Plaintiff's claim."

- 13 -

§ 2560.503-1(f) (requiring notice of the specific reason or reasons for the denial of benefits).[9] The Court disagrees. Ms. Kurth's second report was prepared in response to Ms. Clapp's report prepared on behalf of Plaintiff. The second report merely re-affirmed Ms. Kurth's earlier findings and addressed the methodology utilized by Ms. Clapp. The Court finds that the second report does not contain any information concerning Plaintiff's ability to perform the duties of "any occupation" that was not contained in Ms. Kurth's first report. Further, the Court considers this argument waived in light of Plaintiff's representation at oral argument that the Court has before it, via the parties' filings, all of the information necessary to render a decision. Because the Court previously determined that the *de novo* standard of review would apply to the issues being appealed on remand, had Plaintiff truly believed she was improperly denied the opportunity to respond to Ms. Kurth's second report, she could have sought to introduce additional evidence, not in the record, under *Mongeluzo v. Baxter Travenol Disability Benefit Plan*, 46 F.3d 938 (9th Cir. 1995).

Sixth, Plaintiff argues that Defendant failed to inform her, before she filed her appeal after remand, of the information it required to properly consider any appeal. The Defendant is required, under 29 C.F.R. § 2560.503-1(f), now subpart (g), to describe "any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." However, even if Defendant failed to explicitly describe "any additional material or information," Defendant's decision will not be invalidated if there was substantial compliance with the regulation. *Chuck v. Hewlett Packard Co.*, — F.3d —, 2006 WL 2052288, *4 (9th Cir. 2006) (incorrectly citing as a Ninth Circuit decision *Brogan v. Holland*, 105 F.3d 158 (4th Cir. 1997)). "To substantially comply with the regulation, the Trustees must have supplied the beneficiary 'with a statement of reasons that, under the circumstances of the case, permitted a sufficiently clear understanding of the administrator's position to permit effective review.'" *Brogan*, 105 F.3d at 165

---

[9]This provision is now contained in 29 C.F.R. § 2560.503-1(g).

- 14 -

(citations omitted). Further, the Ninth Circuit has explained:

> In simple English, what this regulation calls for is a meaningful dialogue between ERISA plan administrators and their beneficiaries. If benefits are denied in whole or in part, the reason for the denial must be stated in reasonably clear language, with specific reference to the plan provisions that form the basis for the denial; if the plan administrators believe that more information is needed to make a reasoned decision, they must ask for it.

*Booten v. Lockheed Medical Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997); *see also Bojorquez v. E.F. Johnson Co.*, 315 F.Supp.2d 1368, 1373 (S.D. Fla. 2004) ("an insurance company does not have to tell a claimant what information he will need to provide in order to 'win' his appeal; rather, substantial compliance exists where the claimant understands what additional materials to provide in order for the appeals process to prove effective.")

In this case, the Court already has reviewed the Defendant's October 2, 2000 and January 11, 2001 correspondence to Plaintiff that clearly outlined the reasons for Defendant's decision to deny benefits. *See* Findings of Fact and Conclusions of Law (Doc. # 55), pp. 6 and 7. After remand, and pursuant to the Court's instructions, Defendant submitted Ms. Kurth's vocational evaluation report, which further supported Defendant's decision to deny Plaintiff benefits. The Court finds this sufficient to show that Defendant engaged in meaningful dialogue with Plaintiff concerning the disability determination and that the statement of reasons "permitted a sufficiently clear understanding of [Defendant's] position to permit effective review." *Brogan*, 105 F.3d at 165. Thus, Defendant did not violate 29 C.F.R. § 2560.503-1(f), now subpart (g).

Finally, Plaintiff argues that if the Report Upon Remand (Doc. # 77) is a new decision, then Plaintiff's benefits should have been paid until the date of the report. Alternatively, Plaintiff argues that the evidence in the report did not exist at the time of the Defendant's original decision in 2000; thus, the evidence cannot support the original decision. In support of the latter argument, Plaintiff cites *Matuszak v. Torrington Company*, 927 F.2d 320, 322-23 (7th Cir. 1991), which states that "*no* plan can provide discretion to deny

- 15 -

1 benefits for reasons identified only years after the fact."

2 The Court finds *Matuszak* to be inapposite. Specifically, in *Matuszak*, the defendants
3 originally denied benefits because the plaintiffs had not been actively working on the date
4 of the plant closure announcement. During litigation before the District Court, the
5 defendants changed the reason for the denial of benefits and asserted that the plaintiffs were
6 denied benefits because they did not possess sufficient seniority. In contrast, Defendant
7 herein originally denied benefits on the ground that Plaintiff is not disabled under the "any
8 occupation" standard and, after remand, denied benefits on the same ground. Even if the
9 Court found *Matuszak* to be on point, the only remedy provided for the defendants' action
10 was a *de novo* review of the decision to deny benefits. As discussed, the Court already
11 determined that the *de novo* standard of review would apply to the issues being appealed on
12 remand.

13 Further, Plaintiff is not entitled to a retroactive award of benefits because the Report
14 Upon Remand is not a new decision. As discussed, the Court previously found "ample
15 evidence in support of Defendant's conclusion that Plaintiff was able to perform some
16 unnamed 'sedentary' job." However, the Court remanded the matter to the Defendant because
17 "it failed to make a reasonable inquiry into the type of skills Plaintiff possesses and whether
18 those skills may be used at another job." As the court in *Quinn v. Blue Cross and Blue Shield*
19 *Association*, 161 F.3d 472, 477 (7th Cir. 1998), stated:

> [W]hen a court or agency fails to make adequate findings or fails to provide an adequate reasoning, the proper remedy in an ERISA case, as well as a conventional case, is to remand for further findings or explanations, unless it is 'so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any ground.'

(Citations omitted). In such a situation, a retroactive award of benefits is not appropriate. *Id.*[10] Thus, because the Court previously remanded the matter to Defendant for further

---

[10] According to the court in *Quinn*, "[c]ases that call for reinstatement usually either involve claimants who were receiving disability benefits, and, but for their employers'

findings, Plaintiff is not entitled to a retroactive award of benefits.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Judgment under Rule 52(c) (Doc. # 108) is granted to the extent it requests relief pursuant to Rule 52 of the Federal Rules of Civil Procedure and denied in all other respects;

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment Re: Report and Issues on Remand (Doc. # 105) is denied; and

**IT IS FURTHER ORDERED** that, on the submission of the record pursuant to *Kearney v. Standard Ins. Co.*, 175 F.3d 1084 (9th Cir. 1999), the parties' representations during oral argument, and Rule 52 of the Federal Rules of Civil Procedure, the Clerk of Court is directed to enter judgment in favor of Defendant and against Plaintiff, in accordance with the reasons set forth herein.  Plaintiff is to take nothing.

DATED this 16th day of August, 2006.

_____
James A. Teilborg
United States District Judge

---

arbitrary and capricious conduct, would have continued to receive the benefits, or they involve situations where there is no evidence in the record to support a termination or denial of benefits." *Quinn*, 161 F.3d at 477 (citations omitted).